IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-02293-LTB-KMT

SANDRA S. SEELY,

       Plaintiff,

v.

PAUL ARCHULETA, and ABF FREIGHT SYSTEMS, INC.,

       Defendants.

_____

## ORDER
_____

      This matter is before me on six motions filed between the parties.  Plaintiff has four pending motions *in limine*: (1) Motion *in Limine* Re: Unfounded Disciplinary Complaints **[Doc #76]**; (2) Motion *in Limine* Re: Correlation Between Amount of Visible Property Damage and Potential for Injury **[Doc #83]**; (3) Motion *in Limine* Re: Credibility **[Doc #67]**; and the (4) Motion *in Limine* Re: Plaintiff's Claim for Social Security Disability Benefits **[Doc #75]**. Defendants have the following two motions pending: (1) Motion to Amend Defendants' Exhibit List **[Doc #79]**; and the (2) Motion *in Limine* Re: Permission to Discuss in Opening, Closing and to Examine Witnesses Re: Plaintiff's Application for Social Security Disability Benefits, Social Security Judge's Decision Following Social Security Hearing and Transcript of Social Security Hearing **[Doc #80]**.

## I. Background

On October 22, 2008, Plaintiff Sandra S. Seely, filed a complaint with this Court under diversity jurisdiction against Defendants Paul Archuleta and ABF Freight Systems, Inc., claiming negligence and negligence per se for her personal injuries suffered from a car collision. The Final Pretrial Order **[Doc #37]** was entered on February 22, 2011.  Trial is scheduled for Monday, August 22.

## II. Plaintiff's Motions

Plaintiff's four motions *in limine* all seek to preclude Defendants from making any reference during trial to certain things.  Defendants' counter arguments to each motion are also similar.  Because the law governing Plaintiff's motions is substantially the same, and for clarity and brevity, that law will be presented first, followed by each motion's appurtenant background, arguments, and analysis.

### A. Law

"Decisions on evidentiary matters lie within the sound discretion of the district court and will not be disturbed absent a clear showing of abuse of discretion."  *Orjias v.* Stevenson, 31 F.3d 995, 999 (10th Cir. 1994) (citing *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir. 1991) *cert. denied*, 502 U.S. 1102 (1992)).  The fundamental evidentiary issue is relevancy. Relevant evidence is inadmissible, and irrelevant evidence is inadmissible.  *See* Fed. R. Evid. 402.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id.* R. 401.  Rule 403 provides, however, that relevant evidence may be excluded if its probative value is substantially outweighed by, *inter alia*, the danger of unfair

prejudice, confusion of the issues, or misleading the jury. *Id.* R. 403. I have "considerable discretion in performing the Rule 403 balancing test." *U.S. v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001). Accordingly, my Rule 401 and 403 determinations receive deference and are reviewed under an abuse of discretion standard. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005). That considerable discretion also extends to cross-examination and impeachment evidence. "The extent and scope of the cross-examination of a witness and of impeachment evidence in respect to an appropriate subject rests, to a large extent, within the sound discretion of the trial court." *Lewis v. Owen*, 395 F.2d 537, 541 (10th Cir. 1968). If I have concerns of harassment, prejudice, or confusion of the issues, I specifically have "broad discretion to impose reasonable limits on cross-examination." *Orjias*, 31 F.3d at 1008.

### B. Motion *in Limine Re: Unfounded Disciplinary Complaints*

With this motion, Plaintiff seeks an order prohibiting Defendants from any reference during the trial to two complaints filed with the Colorado Board of Optometric Examiners concerning Dr. James F. Georgis. Dr. Georgis treated plaintiff for post traumatic visual disturbances. Plaintiff intends to call him as a witness to testify about the nature and extent of Plaintiff's injuries, the treatment he rendered and its results, the physical limitations imposed by the injuries, and Plaintiff's prognosis. During Dr. Georgis' deposition, inquiry was made into whether anyone had ever filed a complaint against him with the Board of Optometric Examiners. Dr. Georgis stated that complaints had been filed "maybe a couple of times. But they were both thrown out. There was no evidence that I did anything wrong." He further stated that "it's been so long, I can't even remember . . . They were so insignificant it really wasn't memorable."

Subsequent investigations revealed that two complaints were filed. One was dismissed in

August 2007 because the facts presented did not disclose evidence of a violation of the

Optometric Practice Law.  The second complaint was dismissed in May 2008 for no violation of

the Optometric Practice Act.  No disciplinary action was taken against Dr. Georgis.

### 1. Summary of Arguments

Citing Rule 401, Plaintiff argues that evidence of or reference to these complaints is

irrelevant to the issues in this case and should be prohibited.  She further contends that reference

to the complaints is not appropriate impeachment material because the facts of the complaints do

not bear upon Dr. Georgis' competence with respect to evaluating and treating Plaintiff, nor are

they probative of his character for truthfulness or untruthfulness as required by Rule 608(b).  *See*

Fed. R. Evid. 608(b) (providing that specific instances of the witness' conduct may be inquired

into on cross-examination concerning the witness' character for truthfulness or untruthfulness, so

long as the specific instance is probative of truthfulness or untruthfulness).  Plaintiff lastly argues

that, under Rule 403, any reference, statement, impeachment, or questioning regarding these

complaints should be precluded because their probative value is substantially outweighed by the

danger of unfair prejudice, misleading the jury, and confusion of the issues.

Citing cases from other jurisdictions, Defendants begin their response by asserting that

the credibility of a witness is always relevant in the search for truth and that a court should not

preclude submission of evidence or testimony on cross-examination that might undermine a

witness' credibility as permitted under Rule 608.  Defendants, again citing non-controlling cases,

then argue that Rule 403 should be relied on very sparingly.

The heart of Defendants' response, however, is curious.  Defendants do not appear to

argue that the they want to reference the complaints or use them to impeach Dr. Georgis'

credibility by virtue of the fact that the complaints were filed.  Rather, Defendants purportedly

want to use the complaints to impeach Dr. Georgis' ability to properly remember facts regarding

the bases for his diagnosis, which, they argue, is highly probative of his credibility.  Defendants

root this argument in the fact that while Dr. Georgis is likely to testify about other past facts with

specificity–his 40 years of experience and his publications, for example–he claimed in his

deposition that he could not remember anything about the nature of the two complaints.

Defendants also rejoin that because Plaintiff is aware of the complaints, she can minimize any

potential confusion or improper jury inference by having Dr. Georgis explain the background

and results of the complaints.  Defendants lastly appeal to due process rights, arguing that

prohibiting any reference to and questioning concerning the complaints will severely prejudice

those rights.

### 2. Analysis

To begin, it is dubious whether the complaints are relevant and therefore admissible

under Rule 401.  As stated, Defendants do not intend to use the complaints to suggest that Dr.

Georgis' diagnosis was incorrect or to similarly undermine his abilities as physician.  They

instead want to impeach his ability to properly remember facts to suggest that his memory is

questionable and that his testimony is therefore questionable too because he will draw upon his

memory for his testimony.  The relevancy is attenuated at best.  What is relevant in this case and

in Dr. Georgis' testimony is his diagnosis, treatment, and prognosis at the time they were made.

And what distinguishes his testimony is that Dr. Georgis presumably made notes and records of

his diagnosis, treatment, and prognosis–notes and records that he surely has and will continue to

review for trial.  These records were made at the time of diagnosis and are thus not subject to any

ability or inability to recall.  The relevance of his inability to recollect not the existence but the nature of the allegations of two complaints dismissed over three years ago is thus opaque.

Assuming that the complaints are relevant under Rule 401, I find that they are nevertheless prohibited by Rule 403.  Defendants contend that evidence of the complaints and Dr. Georgis' ability to remember facts is highly probative with respect to Dr. Georgis' credibility and the proper weight to be given by the jury to his opinions.  I have wide latitude in balancing the complaints' probative value against the danger of unfair prejudice, confusion of issues, and misleading the jury.  *See Tan*, 254 F.3d at 1211; *Tanberg*, 401 F.3d at 1162.  Here, I find that such dangers substantially outweigh the probative value.  As suggested above, the complaints' probative value is highly questionable.  This is especially true considering the complaints were ultimately dismissed and did not result in any disciplinary action.  Moreover, we all both forget and remember things in our lives that occurred equidistant in the past.  The fact that Dr. Georgis can testify that he has 40 years of experience and can recall various publications while he simultaneously claims to have no recollection about the nature of two complaints dismissed over three years ago is not particularly concerning to me.

I am, however, concerned about misleading the jury, confusing the issues, and unfair prejudice to Plaintiff because of the mental gymnastics that Defendants wish the jury to perform when hearing and considering the complaints.  Ostensibly, Defendants want the jury to understand that it should not infer from the complaints that Dr. Georgis' medical conclusions are suspect, but rather, because he can remember some things but not others, that his recollection with respect to the instant case is also suspect.  With that logic, any witness who has or ever will testify can be impeached because we all forget things.  What I fear is likely to happen is that the

jury will be misled into infering that the complaints speak to Dr. Georgis' expertise and his

ability as a physician and will result in unfair prejudice.  These are concerns that allow me to

preclude the evidence and to reasonably restrict Defendants' cross-examination of Dr. Georgis.

*See Orjias*, 31 F.3d at 1008 ("Trial courts retain broad discretion to impose reasonable limits on

cross-examination based on concerns of harassment, prejudice, or confusion of the issues.").

Defendants also cite Rule 607, which provides that  the credibility of a witness may be

attacked by any party, and suggest that they are allowed to use the complaints to contradict Dr.

Georgis.  "Impeachment can be accomplished in a number of ways, including contradiction,

which occurs when an opposing party endeavors to show that a fact to which the witness had

testified is not true or is not correct."  *See U.S. v. Cerno*, 529 F.3d 926, 933 (10th Cir. 2008)

(citing *United States v. Crockett*, 435 F.3d 1305, 1313 (10th Cir. 2006)).  While true, there are

two problems with this argument.  First, the right to cross and impeach is not unfettered.  As

both *Lewis* and *Orjias* instruct, the extent and scope of both cross-examination and impeachment

evidence  must involve an appropriate subject and rest within my broad discretion.  *Lewis*, 395

F.2d at 541; *Orjias*, 31 F.3d at 1008.  Second, as Defendants currently articulate their intentions,

they would not be contradicting "a fact to which the witness had testified."  It is not as though

Dr. Georgis said in his deposition that he remembers all the granular details of the complaints

and then intends to claim at trial that he does not remember anything or that introducing the

complaints would show that his medical opinions were incorrect.  Their purported use, at this

point, is thus impermissible.

Defendants' due process argument is also unavailing.  My ruling that Defendants may not

refer to the complaints nor question Dr. Georgis about them plainly does not deny or unduly

restrict Defendants' ability to cross-examine Dr. Georgis.  Indeed, Defendants may attack his

credibility and medical conclusions directly.  It is that just that they must do so with evidence

having relevancy that is not substantially outweighed by other dangers.  This is the type of

"reasonable limit[]" that *Orjias* countenances.  *See Orjias*, *supra*.  *Reilly v. Pinkus*, 338 U.S. 269

(1949), which Defendants cite for this argument, is facially distinguishable.  There, the

government called doctors as witnesses whose testimony was based on certain medical books,

but the trial court refused to let the opposing party cross-examine those witnesses concerning

divergent statements in other authoritative medical books.  *See id.*  The Court refused to enforce

that order.  *Id.* at 273 ("It certainly is illogical, if not actually unfair, to permit witnesses to give

expert opinions based on book knowledge, and then deprive the party challenging such evidence

of all opportunity to interrogate them about divergent opinions expressed in other reputable

books.").  Dangers of unfair prejudice, misleading the jury, or confusion of the issues were

absent.  *See id.*  By contrast, in this case, Defendants do not seek to undermine or challenge Dr.

Georgis' medical conclusions with divergent opinions, and there are many substantial dangers.

Accordingly, for the reasons above, I GRANT Plaintiff's motion.

### C. Motion in Limine *Re: Correlation Between Amount of Visible Property Damage and Potential for Injury*

In this motion, Plaintiff seeks an order precluding Defendants from using or referencing

the fact that the injuries Plaintiff sustained could not have resulted from a minor or low impact

collision as evidenced by the amount of property damage visible in photographs of Plaintiff's

vehicle.  This motion dovetails with Plaintiff's response to Defendants' Motion to Amend

Defendants' Exhibit List, discussed below in Part III.A, *infra*.  There, Defendants seek to add

photographs of Plaintiff's vehicle that they "inadvertently" failed to list in their original exhibit

list to their final exhibit list.

### 1. Summary of Arguments

Incorporating her response to Defendant's Motion to Amend Exhibit List, Plaintiff essentially argues that Defendants should be precluded from making such statements because the photographs themselves are inadmissible, and thus reference to them is inadmissible too. *See* Part III.A.1, *infra* (summarizing Plaintiff's arguments for why Defendants should be precluded from introducing the photos). She specifically emphasizes that the correlation between the degree of physical damage to Plaintiff's car and Plaintiff's injuries is strictly the province of experts and that Defendants have not endorsed an expert qualified to opine on the correlation here. Plaintiff asserts that only a physician can testify as to causation of an injury according to a reasonable medical probability standard.

In their response, Defendants contend that they in fact plan to call Dr. Triehaft, a neurologist, as an expert witness. Dr. Triehaft was listed in the Final Pretrial Order. His reports, also disclosed to Plaintiff, noted the minor damage to Plaintiff's vehicle. Defendant also counters that Plaintiff misstates many of the cases she relies upon for support.

### 2. Analysis

I disagree with Plaintiff. She simply asks for too much in this motion. To begin, it is *non-sequitur* to conclude that because the photos are inadmissible oblique references to the damage to Plaintiff's car are inadmissible too. This is in part because my ruling that the photos are inadmissible is predicated not by Rules 401, 402, or 403, but by the fact that Defendants failed to proffer a sufficient reason for failing to include them in the final exhibit list. *See* Part III.A.2, *infra.*

In the proper context and subject to other possible objections, a statement or question concerning whether the injuries Plaintiff sustained could have resulted from a minor or low impact collision as evidenced by the amount of property damage visible in photographs of Plaintiff's vehicle could be appropriate.  Defendants plan to have their medical expert discuss the correlation, which Plaintiff's argue is a prerequisite.  Assuming Dr. Triehaft is qualified as an expert sufficient to testify on this correlation, as determined during trial, that testimony would also be relevant because Defendants' seek to use it to contest causation and Plaintiff's injuries, therefore passing Rules 401 and 402.  *See* Fed. R. Evid. 401 (stating that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").  I find no danger that substantially outweighs its probative value under the Rule 403 balancing test, which I have "considerable discretion in performing." *Tan*, 254 F.3d at 1211.

Additionally, if Dr. Triehaft becomes qualified as an expert with respect to this correlation, that qualification renders inapposite those cases that Plaintiff cites for the proposition that absent expert testimony, the introduction of physical evidence for the purpose of inferring the seriousness or lack thereof of personal injuries is inadmissible.  *See, e.g.*, *Davis v. Maute*, 770 A.2d 36 (Del. 2001).  Plaintiff's reliance on *Schultz v. Wells*, 13 P.3d 846 (Colo. App. 2000), is not compelling, primarily because it is not controlling.  Furthermore, the court there did not announce a per se rule against evidence of the correlation.  *Id.*  Rather, the court engaged in an analysis under Rule 702 very specific to the facts of that case, facts that make the case distinguishable.  *Id* at 852 ("In coming to its conclusion [that the evidence of the correlation was inadmissible under 702] the court reasoned that the tests used to ascertain safety for the

purposes of doing a cost-benefit analysis with regard to the expense of designing the seat of a car were not applicable to prove that a particular person was unlikely to be injured in a specific accident. The court assessed the usefulness of presenting a probability theory to a jury, and concluded that such testimony would be confusing and misleading to the jury.").

I am also concerned about unfair prejudice to Defendants.  Plaintiff intends to call numerous doctors as witnesses to testify that the injuries Plaintiff alleges were caused by the auto accident in question, yet they argue that Defendants' experts cannot so opine.  Here, I exercise my broad discretion over evidentiary matters to allow Defendants to make such inquiries and statements, subject to other objections and Rules.  They may do so without the aid of their photographs at their own peril.

For the reasons above, I DENY this motion.

### D. Plaintiff's Motion in Limine Re: Credibility

In her third motion, Plaintiff seeks to exclude any and all references during trial to the determination by the Administrative Law Judge concerning Plaintiff's credibility in connection with Plaintiff's application for Social Security disability benefits.

Plaintiff alleged that after the accident, she was no longer able to perform the types of employment activities that she engaged in before the accident.  As a consequence, she filed a claim for Social Security disability benefits on June 8, 2007, alleging that as a result of certain injuries, she was unable to sustain competitive work activity.  Her claim was initially denied. This resulted in a hearing before Administrative Law Judge Kathryn D. Burgchardt (the "ALJ") (the "Social Security Hearing").  The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act, and benefits were denied.  The ALJ found that, among other

11

things, "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are essentially not credible, especially concerning her claim that her symptoms prevent all work activity" (the "ALJ Determination").  Defendants wish to reference and use the ALJ Determination here to challenge the Plaintiff's credibility and the credibility of certain medical experts she plans to call as witnesses.

### 1. Summary of Arguments

Plaintiff argues that the ALJ Determination is unique to the Social Security sphere because the term and conclusion of "credible" refers to a complex process prescribed by the Social Security Act.  Therefore, Plaintiff contends, it is not currency in this action and should be excluded.

Although not lucid,  Defendants appear to argue on a number of grounds that they should be able to reference and use the ALJ Determination.  The first is that the ALJ Determination is relevant to Plaintiff's claims and her experts' opinions that her alleged injuries and symptoms prevent Plaintiff from any meaningful work activity and to Defendants' lack of causation and failure to mitigate defenses.  The second is that Defendants have a right to challenge the credibility of any witness.  Defendants argue that Plaintiff intends to testify and to have medical experts testify, and this evidence would undermine their testimonies.  They also argue that prohibiting referencing and using the ALJ Determination would violate their due process rights.

### 2. Analysis

I begin my analysis by noting my skepticism of the relevance of the ALJ Determination in this case.  To be clear, my skepticism derives not from the ALJ Determination itself, but rather, by importing it from the foreign world of Social Security into this case.  This is because

the prescribed process by which the ALJ made the ALJ Determination is highly technical, rigorous, and wholly unique to Social Security law. *See* Social Security Regulation 96-7p.  In the Social Security context, when evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record, which includes a cornucopia of specialized, scientific, and unique pieces of evidence and processes. *See id.*  This evaluation  may lead to findings and conclusions in the Social Security world that simply do not translate or apply outside that realm.  The jury here will be making different findings–not determining whether Plaintiff is credible and disabled within the meaning of the Social Security Act. Furthermore, the jury here does not have such detailed prescriptions and processes for making their findings, especially with regard to credibility.  I am thus circumspect over whether the ALJ Determination is relevant.

I need not, however, decide this motion on Rule 401 and 402 grounds because assuming that the ALJ Determination is relevant, the danger of confusion, misleading the jury, and unfair prejudice substantially outweigh its probative value**.**  This is sufficient grounds to exclude the evidence and restrict cross-examination under Rule 403, *Lewis*, *supra*, and *Orjias*, *supra*.  The probative value is unclear at best, for the reason that the ALJ Determination derives from a process *sui generis* to the Social Security world**.**  Turning, then, to the other side of the balancing test, I find a substantial danger of misleading the jury, unfair prejudice, and confusing the issues. If Defendants are allowed to reference and use the ALJ Determination, that will unavoidably open the proverbial Pandora's Box into just what it represents and what and how the ALJ considered when forming it,  meaning the jury will be subjected to the distinct world of Social Security disability determinations–not what this case is about. Then, even if the jury was able to

digest and comprehend what the ALJ Determination represented in the Social Security context, it would then be confronted by the question with which I struggle: What bearing does it have on this case?  Risking that the jury will venture to consider these questions substantially risks obfuscating the issues.  Accordingly, I can impose reasonable restrictions under *Orjias*.  *See Orjias, supra.*

Defendants cite *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879 (8th Cir. 2006), for the proposition that the probative value of a plaintiff's Social Security records outweighs their prejudicial effect in the context of claims for personal injury.  That case does not determine the outcome here because it is not controlling, nor does it stand for the proposition that the probative value of Social Security records always outweighs their prejudicial effect.  *See id. Smith* does, however, show that when considering whether to admit Social Security records, courts engage in the same balancing test that I do here.  *Id.* at 885.

Defendants also argue that they have the right to challenge the credibility of any witness, citing *Lewis, supra*, and a number of Federal Rules of Evidence in support.   But Defendants fail to cite the quote from *Lewis* that "[t]he extent and scope of the cross-examination of a witness and of impeachment evidence in respect to an appropriate subject rests, to a large extent, within the sound discretion of the trial court."  395 F.2d at 541.  *Lewis*, then, does not stand for the proposition that a party's right to challenge the credibility of witness is unbridled–far from it. Like other Rules, impeachment is still subject to the Rule 403 balancing test, which I have "considerable discretion in performing."  *See Tan*, 254 F.3d at 1204.  Moreover,  I "retain broad discretion to impose reasonable limits on cross-examination based on concerns of harassment, prejudice, or confusion of the issues."  *Orjias*, 31 F.3d at 1008 (10 th Cir. 1994).

Indeed, in *Orjias*, the Tenth Circuit upheld a trial court order precluding a party from mentioning a favorable and related prior decision rendered by a district court in the same district, even as an impeachment tool. *See Orjias*, *supra* ("[W]e do not believe that L-P was prejudiced by being unable to mention [the previous] decision as an impeachment tool. . . Accordingly, we hold that the district court did not err in . . . preventing mention of the [previous] decision in L-P's cross-examination . . . ."). To underscore this point, one of the cases Defendants cite in support militates against such an order. In *U.S. v. Lopes-Ortiz*, 736 F. Supp. 2d 469, 470-71 (D. Puerto Rico 2010), the court held that admitting evidence of that same court or a magistrate judge's prior credibility findings could unfairly prejudice the opponent "because it may cause the jury to base its decision on something other than the established proposition in the case." *Id.* at 471 (internal quotations omitted). The court further stated that "[a]llowing evidence to be admitted in the form of this Court's prior opinion or in the opinion of the magistrate judge regarding the credibility of the government witness could improperly taint or influence the jury." *Id.* at 471. Though that case is not controlling, I share similar fears here.

Defendants also cursorily cite Rules 801(d)(1) and (2) in support. This citation is patently unhelpful. Those Rules deal with prior inconsistent statements made under oath and admissions of a party opponent, respectively. Defendants do not proffer any prior inconsistent statement made by Plaintiff or her witnesses; they are trying to use the ALJ's statements. It is also unclear what Plaintiff has "admitted."

Finally, Defendants' due process argument fails. My ruling that Defendants may not refer to the ALJ Determination neither denies nor unduly restricts Defendants' ability to cross-examine Plaintiff or her witnesses. *See Orjias, supra*; *Lewis, supra.* Defendants may still attack

15

their credibility with considerable force.  It is that just that they must do so with evidence having probative value that is not substantially outweighed by other dangers.

For the reasons above, I GRANT this motion.

### E. Motion in Limine Re: Plaintiff's Claim for Social Security Disability Benefits

With her fourth motion, Plaintiff seeks an order preventing any and all references to and uses of the ALJ's findings of fact, conclusions of law, and decision with respect to Plaintiff's Social Security claim.  Defendants want to reference and use the following the following from the Social Security Hearing during opening, closing, and witness examination: Plaintiff's testimony regarding work performed and not performed; work she was able to do and unable to do; physical limitations; the amount of benefits Plaintiff would receive if she was determined to be disabled; and the ALJ's findings of fact, review of medical records, and decision.

#### 1. Summary of the Arguments

Plaintiff has three arguments in support of this motion.  First, under Rule 401, those things appurtenant to the Social Security Hearing are irrelevant here because "the considerations involved in the grant or denial of Social Security disability benefits are wholly different from the considerations involved in whether Plaintiff sustained injuries, losses, or damages" from the accident in question.  Second, even if relevant, they should be excluded under Rule 403 because there is the potential of confusing the issues or misleading the jury.  Third, there is a risk that statements Defendants draw upon will incorporate impermissible hearsay.

Defendants argue the following in their response.  The facts related to and derived from the Social Security Hearing are directly relevant here because they establish conflicting evidence regarding the nature and extent of evidence that Plaintiff intends to present.  Additionally, they

have a right to examine Plaintiff's experts with respect to the bases for their opinions.

Defendants intend to call an expert witness, Gail Pickett, who will testify that the facts regarding

Plaintiff's Social Security disability claim are of a type reasonably relied upon by vocational

experts.  They then intend to cross-examine Plaintiff's expert witnesses as to why they did not

consider the ALJ's Determination and findings, or the Social Security Hearing's record and

testimony.  Defendants next argue that Rule 403 should be used very sparingly to preclude

evidence, citing a number of non-binding cases for this proposition, and that their right to cross-

examine is broad, especially with regard to their ability to undermine the witness' credibility.

Defendants lastly appeal to due process rights.

### 2. Analysis

At the outset, I reiterate the general principles that I have wide discretion to determine

relevancy and to balance the probative value of evidence against other concerns when deciding

admissibility under Rules 401 and 403, respectively.  *Tan*, 254 F.3d at 1211;  *Tanberg*, 401 F.3d

at 1162.  Similarly, the extent and scope of cross-examination and impeachment evidence also

rest within my broad discretion.  *See Lewis*, 395 F.2d at 541; *see also Orjias*, 31 F.3d at 1008.

### i. Expert Testimony

I begin by briefly presenting the law unique to this portion of Plaintiff's motion.  Federal

Rule of Evidence 703 permits an expert to testify to an opinion she formed even if she based that

opinion on otherwise inadmissible facts or data, which at times may include out-of-court

testimonial statements**.**  Fed. R. Evid. 703; *U.S. v. Pablo*, 625 F.3d 1285, 1292 (10th Cir. 2010).

Rule 703 further provides that "[fa]cts or data that are otherwise inadmissible shall not be

disclosed to the jury by the proponent of the opinion or inference unless the court determines that

their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703; *accord Pablo*, 625 F.3d at 1285 ("Although an expert often will not disclose this otherwise inadmissible information to a jury, Rule 703 permits disclosure to the jury if 'the court determines that [its] probative value in assisting the jury to evaluate the expert's opinion substantially outweighs [its] prejudicial effect.' ").  The disclosure of this otherwise inadmissible information, however, "is to assist the jury in evaluating the expert's opinion, *not to prove the substantive truth of the otherwise inadmissible information*." *Pablo*, 625 F.3d at 1285 (emphasis added).

With respect to Defendants' direct examination of Ms. Pickett, I conclude Defendants may not, through their questions or Ms. Pickett's answers, disclose that she considered the ALJ Determination, her findings, or any other evidence from the Social Security Hearing in forming her opinion.  This is because, as I discussed in  Part II.D, *supra,* I do not find that the probative value of that evidence substantially outweighs their prejudicial effect, which *Pablo* and Rule 703 require**.**  Furthermore, I am frankly suspicious about Defendants' motives in unearthing this basis of their expert's opinion insofar as I believe they wish to do so to prove the substantive truth of the information, not to assist the jury in evaluating Pickett's testimony.  This purpose is impermissible under *Pablo*. 625 F.3d at 1285.

I also disagree with Defendants' claim that they can illuminate the Social Security Hearing and its record and testimony through Plaintiff's experts on cross.  Yes, under Rule 705 Defendants can inquire into the facts underlying Plaintiff's experts' opinions.  *See Maresee v. U.S. Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989); Fed. R. Evid. 705.  But again, "[t]he extent and scope of the cross-examination of a witness and of impeachment evidence in respect to an

appropriate subject rests, to a large extent, within the sound discretion of the trial court." *Lewis*, 395 F.2d at 541.  Here, I exercise that discretion to reasonably circumscribe the extent to which Defendants can cross Plaintiff's expert witnesses and use impeachment evidence with respect to how much the experts relied on or did not rely on evidence from the Social Security Hearing.

Defendants cannot inquire into whether Plaintiff's experts relied upon the ALJ Determination or her other findings because, for reasons discussed in Part II.D, *supra*, I conclude that the dangers of confusion, misleading the jury, and unfair prejudice substantially outweigh any probative value.  *See* Fed. R. Evid. 403.  And these concerns afford me "broad discretion" to impose reasonable limits on Defendants' cross-examination.  *See Orjias*, 31 F.3d at 1008.  Similarly, in this context, Defendants are the proponents of the inference–the inference that Plaintiff's experts' opinions are unsound because they did not rely on the Social Security Hearing record and the ALJ's Determination and findings.  This means that to disclose facts or data derived from the Social Security Hearing through their cross-examinations, those facts or data must have a probative value that assist the jury to evaluate Plaintiff's experts' opinions that substantially outweighs their prejudicial effect.  Fed. R. Evid. 703; *accord Pablo*, 625 F.3d at 1285.  For reasons already discussed, I find no such value.  *See* Part II.D.2, *supra*.

Subject to other evidentiary rules and proper objections, however, Defendants are free to cross-examine Plaintiff's experts concerning whether, in forming their opinions, they accounted for other facts, reports, or data that did not arise from the Social Security Hearing but that may have nevertheless been used by the ALJ in making her conclusions.  This is because these facts and reports are likely not unique to the Social Security world and thus are currency here.  For example, a statement by Plaintiff that she can only lift 20 pounds means the same everywhere.

19

With respect to this type of evidence, I feel that the dangers articulated above can be mitigated by referencing only the facts or reports themselves, not the Social Security Hearing.  To that end, if Defendants are questioning an expert about a report on which the expert did not rely and that the ALJ considered, they should not make any reference to the Social Security Hearing or ALJ, but should instead reference only the report.  Similarly, if referencing the Social Security Hearing is unavoidable, the reference shall be to a "prior proceeding."  Objections to cross-examination questions in this vein will be ruled upon if and when they are made.

### ii. Plaintiff's Testimony & Opening and Closing

Plaintiff also seeks in this motion to prohibit Defendants from discussing the Social Security Hearing and its record in their opening, closing, and in their examination of Plaintiff. The analysis above regarding the Rule 403 balancing test, which I have "considerable discretion in performing," applies again.  *Tan*, 254 F.3d at 1211.  The numerous dangers created by discussing the Social Security Hearing substantially outweigh any probative value.  *See* Part II.D, *supra*.  Similarly, the extent and scope of Defendants' ability to cross-examine Plaintiff and to use impeachment evidence rests within my "broad discretion."  *Lewis*, 395 F.2d at 541; *Orjias v*, 31 F.3d at 1008.  Therefore, consonant with all of Part II, Defendants cannot discuss or cross-examine Plaintiff regarding the ALJ Determination or the ALJ's findings or use any other piece of evidence flowing from the Social Security Hearing.

Defendants cite *Smith*, *supra*, for the proposition that the probative value of a plaintiff's Social Security record outweighs its prejudicial effect in the context of claims for personal injury. 436 F.3d 879.  That case does not determine the outcome here.  First and foremost, it is not controlling.  *See id.* (decided by the Eighth Circuit).  Furthermore, that case was a medical

malpractice case, making it distinguishable from the instant matter. *Id.* Finally, Defendants overstate its holding. The case does not stand for the proposition that the probative value of Social Security records always outweighs their prejudicial effect. Rather, the court in *Smith* engaged in the same balancing test that I do here, a test the Eighth Circuit affirmed as appropriate. *Id.* at 885. *Smith*'s balance simply came out differently.

Consistent with other rules of evidence, however, Defendants can examine Plaintiff regarding a prior statement made while under oath at the Social Security Hearing that is inconsistent with her trial testimony here so long as the prior statement is relevant. *See, e.g.*, Fed. R. Evid 801(d)(1) (allowing a witness to be cross-examined concerning a prior statement inconsistent with trial testimony). I note, however, that Defendants have not proffered any prior inconsistent statements by Plaintiff. Assuming, *arguendo*, that Plaintiff's trial testimony is at some point inconsistent with her testimony at the Social Security Hearing, Defendants can then impeach her using the prior statement, subject to other Rules, appropriate objections, and the restriction I articulate below.

Plaintiff argues that nothing related to the Social Security Hearing is relevant here. That goes too far. Some of the evidence that Defendants wish to reference is relevant–Plaintiff's testimony about the nature and extent of her injuries, for example. While it is true that the Social Security Hearing and the determinations therein are *sui generis*, see Part II.D, *supra*, a statement by a witness that she can only lift 20 pounds means the same everywhere. Plaintiff's testimony at the Social Security Hearing regarding the nature and scope of her injury therefore passes the relevancy standard as defined by Rule 401 and is presumptively relevant here. Additionally, the dangers I have discussed can be mitigated by referencing the statements or evidence directly and

by not discussing them in the context of the Social Security Hearing.  To that end, any statement made by Plaintiff at the Social Security Hearing must be referred to by Defendants as a statement made at or during "a prior proceeding"–that is, a reference must not state or suggest that the statement was made at the Social Security Hearing.  With that restriction, those types of relevant prior statements, insofar as they are inconsistent with her trial testimony, are fair to question Plaintiff about and to discuss during opening and closing.

Defendants' due process argument is again weak.  My ruling does not deny or unduly restrict Defendants' ability to cross-examine Plaintiff and her experts.  Defendants may attack their testimonies and credibility directly in a myriad of ways, possibly even using evidence that the ALJ considered in making her findings.  It is just that Defendants cannot wrap such evidence in the Social Security Hearing dressing that will unavoidably have to be unwrapped for the jury because of the substantial dangers I have discussed.  My ruling is thus a permissible "reasonable limit[]."  *See Orjias*, *supra.*  And if Defendants truly seek to impeach Plaintiff and her experts' opinions, rather than to use them and cross-examination merely as subterfuge to present the ALJ Determination and the ALJ's findings, the packaging of their cross-examinations should be much less important.

For the reasons above, and in accordance with the guidance I have explicated, I GRANT this motion insofar as it seeks to prevent Defendants from discussing the ALJ Determination, findings, or decision during opening, closing, and during their cross-examinations of Plaintiff and her experts.  I DENY the motion insofar as it seeks to categorically bar Defendants from using or referencing any evidence related to, or any prior inconsistent statement made during, the Social Security Hearing, but any reference to the Social Security Hearing during trial must be to

a "prior proceeding."

### III. Defendants' Motions

Defendants have two motions. The first is a motion to amend their exhibit list. The second is a motion *in limine* regarding permission to discuss in opening, closing, and to examine witnesses regarding Plaintiff's application for Social Security disability benefits, social security judge's decision following the Social Security Hearing

#### A. Defendants' Motion to Amend Defendants' Exhibit List

With this motion, Defendants seek to add photographs of Plaintiff's vehicle that they "inadvertently" failed to list in their original exhibit list to their final exhibit list pursuant to the pretrial conference order issued July 22, 2011.

#### 1. Summary of Arguments

Defendants argue the following in support of their motion: Plaintiff's exhibits include the accident report and repair estimates for Plaintiff's vehicle, both of which describe damage to Plaintiff's vehicle.  Plaintiff's witnesses include Plaintiff, Defendant Paul Archuleta, and an officer who investigated the accident, and these witnesses may require some assistance in recalling the condition of Plaintiff's vehicle after the accident because it has been more than five years since the accident.  (I note here that Plaintiff's final witness list does not include the officer or Defendant Archuleta, but this amendment is immaterial for purposes of deciding this motion.) Defendants also argue that admitting the photos will not prejudice Plaintiff because she knew what her vehicle looked like post-accident and other witnesses will be questioned about her vehicles condition pre- and post-accident.  They lastly argue that my order following the Final Pretrial Conference on July 22, 2011, which allowed for the parties to submit updated exhibit

lists, modified the prior instructions in the Final Pretrial Order, the Instructions for Final Trial

Preparation Conference, and the time line in Fed. R. Civ. P. 26(3).

Plaintiff rejoins in her response that Defendants' motion should be denied for a number

of reasons.  She argues that the Final Pretrial Order and Fed. R. Civ. P 26(3) both preclude their

introduction.  Plaintiff also contends that Defendants have not demonstrated the manifest

injustice and good cause that the Final Pretrial Order requires to admit the photos now.  She also

argues that the photos are unnecessary because there is no claim for property damage to her

vehicle and that the photos would prejudice her by inviting the jury to speculate on the threshold

forces involved in the collision and whether those forces were sufficient to cause her injuries, a

determination that only an expert could make.

### 2. Analysis.

The Final Pretrial Order "control[s] the subsequent course of action and the trial, and

may not be amended except by consent of the parties and approval by the court or by order of the

court to prevent manifest injustice."  ¶ 12.  It also provides that copies of listed exhibits must be

provided to opposing counsel no later than five days after the pretrial conference.  ¶ 7(c).

Specifically with regard to exhibits, Paragraph 2 of the Instructions for the Final Trial

Preparation Conference states that "[e]xhibits not listed in the pretrial order may not be included

on the final exhibit lists except by stipulation or showing of good cause. Only those exhibits

listed on the final exhibit lists presented at the final trial preparation conference may be

presented at trial."  "Good cause" is strictly construed.  *See Despain v. Salt Lake Area Metro*

*Gand Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994). "Without attempting a rigid or all-

encompassing definition of 'good cause,' it would appear to require *at least* as much as would be

24

required to show excusable neglect, *as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice . . . .*" *Putnam v. Morris*, 833 F.2d 903, 904 (10th Cir. 1987) (second emphasis added). And I "am clearly not *compelled* to accept a lesser 'excusable neglect' showing." *Id.*

I need not plumb the depths of the parties' arguments to deny this motion. The Final Pretrial Order controls the trial and the exhibits presented therein. The photos were not listed as exhibits in the Final Pretrial Order. Pursuant to the Instructions for Final Trial Preparation Conference and the Final Pretrial Order, then, Defendants must demonstrate manifest necessity and good cause to include them in the final exhibit list. While I appreciate Defendants' candor, "inadvertently" leaving the photos off the exhibit list does not show the requisite good cause. *See Putnam*, 833 F.2d at 904. Furthermore, Defendants' appeal to the absence of prejudice is weak because the absence of prejudice alone does not equate to good cause. *Despain*, 13 F.3d at 1439. Because good cause has not been shown, I need not discuss a showing of manifest necessity.

Defendants argue in their reply that the order I issued following the Final Pretrial Conference on July 22, 2011, modified the prescriptions in the Final Pretrial Order, the Instructions for Final Trial Preparation Conference, and Fed. R. Civ. P. 26(3), allowing them to *add* these photos to their exhibit lists. This is wrong. That order allowing "updates" contemplated only new exhibits to which the parties have stipulated or exhibits that had been removed from the prior list–perfectly consistent with the previous orders and instructions. As such, "[e]xhibits not listed in the pretrial order may not be included on the final exhibit lists except by stipulation or showing of good cause." Defendants have not shown good cause.

Defendants also argue, as a last gasp, that "[a] scheduling order which results in the

exclusion of evidence is a drastic sanction." *Rimbert v. Eli Lilly Co.*, - - - F.3d - - - -, WL

3328543 (10th Cir. Aug. 3, 2011). That case does not help Defendants. In that case, the

exclusion of evidence was not the proponent's fault. *See id.* By contrast, it is not the scheduling

order that precludes the photos here, but Defendants' inadvertent failure to list them originally.

Accordingly, I DENY Defendants' motion.

### B. Defendants' Motion in Limine Re: Permission to Discuss in Opening, Closing and to Examine Witnesses Re: Plaintiff's Application for Social Security Disability Benefits, Social Security Judge's Decision Following Social Security Hearing and Transcript of Social Security Hearing

This motion was filed on August 4, 2011, and was included as part of Defendants'

response to Plaintiff's Motion *in Limine* Re: Credibility. Defendants reasserted this motion

almost verbatim in their response to Plaintiff's Motion *in Limine* Re: Plaintiff's Claim for Social

Security Disability Benefits. Because Part II.E, *supra*, decided this issue, it would be duplicative

to recapitulate my analysis here. See Part II.E, *supra*, for my order.

In accordance with Part II.E, *supra*, I DENY Defendants' motion.

## IV. Conclusion

For the reasons set forth above, IT IS ORDERED that:

1) Plaintiff's Motion *in Limine* Re: Unfounded Disciplinary Complaints **[Doc #76]** is

GRANTED;

2) Plaintiff's Motion *in Limine* Re: Correlation Between Amount of Visible Property

Damage and Potential for Injury **[Doc #83]** is DENIED;

3) Plaintiff's Motion *in Limine* Re: Credibility **[Doc #67]** is GRANTED;

4) Plaintiff's Motion *in Limine* Re: Plaintiff's Claim for Social Security Disability

Benefits **[Doc #75]** is GRANTED insofar as it seeks to prevent Defendants from discussing the

ALJ Determination, findings, or decision during opening, closing, and during their cross-examinations of Plaintiff and her experts, and it is DENIED insofar as it seeks to categorically bar Defendants from using or referencing any evidence related to, or any prior inconsistent statement made during, the Social Security Hearing, but any reference to the Social Security Hearing during trial must be to a "prior proceeding";

5) Defendants' Motion to Amend Defendants' Exhibit List **[Doc #79]** is DENIED; and

6) Defendants' Motion *in Limine* Re: Permission to Discuss in Opening, Closing and to Examine Witnesses Re: Plaintiff's Application for Social Security Disability Benefits, Social Security Judge's Decision Following Social Security Hearing and Transcript of Social Security Hearing **[Doc #80]** is DENIED.

Date: August __17th__, 2011 in Denver, Colorado.

BY THE COURT:

___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE